**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

FUTANG JI; YI-CHING WU; XUYIN ZHOU, individually and as successor-in-interest to MINGDE ZHENG, deceased; and YONG ZONG,

*Plaintiffs,*

v.

GRANDTAG BUSINESS CONSULTANTS, LTD., a Hong Kong company; JAMESON LEUNG, an individual; RENE LEUNG, an individual; GTM ABC, LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,

*Defendants,*

and

GRANDTAG MADISON REALTY, LLC, a Delaware limited liability company, and PUNTA GORDA SENIOR LIVING, LP, a Delaware limited partnership,

*Nominal Defendants.*
______________________________________/

Case No. 2:26-cv-02232

**COMPLAINT**

Plaintiffs Futang Ji, Yi-Ching Wu, Xuyin Zhou (individually and as successor-in-interest to Mingde Zheng, deceased), and Yong Zong (collectively, **"Plaintiffs"**), by and through undersigned counsel, bring this Complaint against Defendants Grandtag Business Consultants, Ltd., Jameson Leung, Rene Leung, GTM ABC,

LLC, Does 1 through 50, and against Nominal Defendants Grandtag Madison Realty, LLC and Punta Gorda Senior Living, LP, and allege as follows:

## INTRODUCTION

1. This is an action to recover $5.25 million that Defendants stripped from a Florida assisted living facility and diverted to insiders and affiliates while the facility's creditors—four immigrant investors whom Defendants had already defrauded of $2 million—were actively litigating to recover their money.

2. Plaintiffs are Chinese-born investors who each invested $500,000 through the federal EB-5 immigrant investor program on the promise that their capital would finance the expansion of The Palms of Punta Gorda—a 56-unit assisted living facility in Charlotte County, Florida. What Plaintiffs were never told was that the insiders orchestrating the investment sat on both sides of the transaction: they controlled the entity that loaned Plaintiffs' money and the entity that received it.

3. When Plaintiffs sued in 2021 to recover their investment, Defendants did not answer for their debts. Instead, on February 28, 2023—in the middle of that litigation, and without a word to Plaintiffs—they sold the Punta Gorda facility for $5.25 million, diverted the proceeds to themselves and their affiliates, and then withdrew the debtor entities' registered agents in two states so that no creditor could find or serve them. To complete the concealment, Defendants funneled the now-empty shell through a purported assignment for the benefit of creditors. The independent assignee's conclusion: zero dollars in cash, barely a year after a $5.25 million sale.

4. Plaintiffs bring this action under the Florida Uniform Fraudulent

Transfer Act, Fla. Stat. §§ 726.101–726.201 ("**FUFTA**"), and Florida common law, to avoid the fraudulent transfers, to recover the diverted proceeds from the transferees and the persons for whose benefit the transfers were made, to impose a constructive trust upon the proceeds and their traceable products, and to hold Defendants jointly and severally liable for the conspiracy by which they accomplished the scheme.

## PARTIES

### A. Plaintiffs

5. **Plaintiff Futang Ji** is a citizen of the People's Republic of China and a lawful permanent resident of the United States. Mr. Ji currently resides in Beijing, China. Mr. Ji invested $500,000 in the EB-5 offering described below.

6. **Plaintiff Yi-Ching Wu** is a citizen of the United States, domiciled in Riverside County, California. Ms. Wu invested $500,000 in the EB-5 offering described below.

7. **Plaintiff Xuyin Zhou** is a citizen of the People's Republic of China and a lawful permanent resident of the United States, domiciled in King County, Washington. Ms. Zhou brings this action individually and as successor-in-interest to her late husband, Mingde Zheng, who invested $500,000 in the EB-5 offering described below and who passed away on December 13, 2022. Ms. Zhou is Mr. Zheng's surviving spouse and the sole beneficiary of his estate.

8. **Plaintiff Yong Zong** is a citizen of the People's Republic of China and a lawful permanent resident of the United States. Mr. Zong currently resides in

Zhengzhou, Henan Province, China. Mr. Zong invested $500,000 in the EB-5 offering described below.

**B. Defendants**

9. **Defendant Grandtag Business Consultants, Ltd.** ("**Grandtag**") is a company organized under the laws of Hong Kong with its principal place of business at Guangdong Financial Building, Floors 26 and 27, 88 Connaught Road West, Sheung Wan, Hong Kong. At all relevant times, Grandtag was a member, the co-manager, and—after August 11, 2020—the sole and exclusive manager of Grandtag Madison Realty, LLC ("GT Madison"), and through GT Madison controlled Punta Gorda Senior Living, LP and the Florida property at issue.

10. **Defendant Jameson Leung** ("**Mr. Leung**") is the Chief Executive Officer of Grandtag and a resident and citizen of Hong Kong. Through Grandtag, Mr. Leung exercised control over GT Madison, Punta Gorda Senior Living, LP, and the disposition of the sale proceeds at issue. Upon information and belief, Mr. Leung received, directed, or benefited from the transfers alleged herein.

11. **Defendant Rene Leung** ("**Ms. Leung**") is the President of Grandtag and the Manager of GT Madison, and a resident and citizen of Hong Kong. Ms. Leung personally executed both the February 28, 2023 agreement selling the Florida property for $5.25 million and the January 5, 2024 general assignment that transferred GT Madison's remaining assets to GTM ABC, LLC. Upon information and belief, Ms. Leung received, directed, or benefited from the transfers alleged herein.

12. **Defendant GTM ABC, LLC** (“**GTM ABC**”) is a limited liability company organized under the laws of Delaware on August 31, 2023, for the sole purpose of serving as assignee under the purported assignment for the benefit of creditors described below. Upon information and belief, GTM ABC’s sole member is GT Madison. GTM ABC is named as the first transferee of the assignment that Plaintiffs seek to avoid, and is sued for avoidance and ancillary relief only.

13. **Defendants Does 1 through 50** are persons or entities—including transferees, subsequent transferees, and persons for whose benefit the transfers alleged herein were made—whose true names and capacities are presently unknown to Plaintiffs. Plaintiffs are informed and believe, and on that basis allege, that each Doe Defendant received some portion of the transferred assets or proceeds, or directed or benefited from the transfers, and is liable to Plaintiffs as alleged herein. Plaintiffs will amend this Complaint to allege the Doe Defendants’ true names and capacities when ascertained.

**C. Nominal Defendants**

14. **Nominal Defendant Grandtag Madison Realty, LLC** (“**GT Madison**”) is a Delaware limited liability company. Upon information and belief, its members are Grandtag and Madison Realty Equities, LLC. GT Madison was the general partner of PGSL and is a debtor and transferor whose transfers Plaintiffs seek to avoid: it directed the Sale of the Property, received or controlled the Sale Proceeds, and executed the ABC Assignment. GT Madison is nonetheless joined only as a nominal party because

the avoidance and monetary relief Plaintiffs seek runs against the transferees and beneficiaries of its transfers, not against GT Madison itself; its joinder is necessary so that the Court may afford complete relief as to those transfers, and no money judgment is sought against it in this action.

15. **Nominal Defendant Punta Gorda Senior Living, LP** ("**PGSL**") is a Delaware limited partnership formerly registered with the Florida Secretary of State, which owned and operated the Florida property at issue and is the debtor on the promissory notes underlying Plaintiffs' claims. PGSL is joined as a nominal party because complete avoidance relief concerns its transfers; no money judgment is sought against it in this action.

**THE PRIOR DELAWARE ACTION**

16. On August 12, 2025, after the California court declined to exercise personal jurisdiction over the Defendants here, Plaintiffs filed an action asserting related fraudulent-transfer and civil-conspiracy claims alleged herein in the Court of Chancery of the State of Delaware, Case No. 2025-0919-LWW (the "**Delaware Action**").

17. By order dated May 28, 2026, the Delaware Court of Chancery dismissed the Delaware Action with prejudice for lack of personal jurisdiction over the moving Defendants, Grandtag and Mr. Leung. Ex. 1, Order Granting Defendants Grandtag Business Consultants, Ltd. and Jameson Leung's Motion to Dismiss Verified Complaint.

18. Plaintiffs file this action in accordance with that ruling. This action is timely: the transfers Plaintiffs seek to avoid occurred on and after February 28, 2023, well within the limitations periods prescribed by Fla. Stat. § 726.110. Unlike the Delaware Action, which turned on the moving Defendants' status as members or managers of Delaware entities, this action arises from Defendants' conduct purposefully directed at Florida: the ownership and operation of a Charlotte County assisted living facility, the February 28, 2023 sale of that Florida property, the execution of the sale and the subsequent assignment by Ms. Leung, and the diversion and concealment of the resulting Florida-derived proceeds. Those Florida-directed acts, not any Delaware entity status, form the basis for this Court's exercise of personal jurisdiction.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(3). Plaintiff Yi-Ching Wu is a citizen of the United States and is domiciled in California. For purposes of diversity, the citizenship of Defendant GTM ABC, LLC is determined by the citizenship of each of its members. Upon information and belief, the sole member of GTM ABC, LLC is Grandtag Madison Realty, LLC ("GT Madison"). Upon information and belief, the members of GT Madison are Grandtag—a Hong Kong company—and Madison Realty Equities, LLC, a Delaware limited liability company.

20. Upon information and belief, the members of Madison Realty Equities, LLC are natural persons domiciled in the United States; the identities and states of

domicile of those members are not presently known to Plaintiffs and are within Defendants' knowledge and control, and Plaintiffs will allege them specifically upon a reasonable opportunity for investigation or jurisdictional discovery.

21. GTM ABC, LLC is therefore a citizen of every State in which any of its members, traced through GT Madison and Madison Realty Equities, LLC, is a citizen, and is not a citizen of any foreign state solely by reason of Grandtag's membership in GT Madison. The amount in controversy exceeds $75,000, exclusive of interest and costs. The remaining Plaintiffs and Defendants are citizens or subjects of foreign states and are additional parties to this action within the meaning of 28 U.S.C. § 1332(a)(3).

22. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs assert a claim arising under the laws of the United States, namely the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), for which 18 U.S.C. § 1964(c) provides a private right of action. That claim is pleaded below.

23. This Court has supplemental jurisdiction over Plaintiffs' remaining claims under 28 U.S.C. § 1367(a). Those claims arise under the Florida Uniform Fraudulent Transfer Act and Florida common law and form part of the same case or controversy as the RICO claim: they arise from a common nucleus of operative fact—the same scheme to defraud Plaintiffs, to liquidate the Florida asset, and to divert and conceal the resulting proceeds—such that Plaintiffs would ordinarily be expected to try all of them in a single proceeding.

24. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to Plaintiffs' claims, and a substantial part of the property that is the subject of the action, occurred and was situated in Charlotte County, Florida, within the Fort Myers Division. The real property whose sale generated the diverted proceeds—The Palms of Punta Gorda—is located in Charlotte County; the entity that owned and operated it, PGSL, was registered with the Florida Secretary of State and conducted business in this District; the sale was consummated in this District; and the EB-5 regional center through which Plaintiffs' investments were channeled, Florida EB5 Investments, LLC, was a Florida entity.

25. Venue is independently proper under 28 U.S.C. § 1391(c)(3) because Defendants Grandtag, Mr. Leung, and Ms. Leung are not resident in the United States and may be sued in any judicial district. Venue over the RICO claim is also proper under 18 U.S.C. § 1965(a) because Defendants transact their affairs, through the enterprise alleged herein, in this District, and 18 U.S.C. § 1965(b) and (d) authorize service of process on the Defendants.

26. This Court has personal jurisdiction over each Defendant under Florida's long-arm statute, Fla. Stat. § 48.193, and the exercise of jurisdiction over each Defendant arises from that Defendant's own Florida-directed conduct as set forth below.

27. Grandtag operated, conducted, engaged in, and carried on a business venture in Florida, Fla. Stat. § 48.193(1)(a)(1). As the sole and exclusive manager of GT Madison, Grandtag owned, managed, and controlled PGSL and the Punta Gorda

facility; it directed the acquisition, operation, and ultimate liquidation of that Florida asset; and it directed and received the diversion of the proceeds of the Florida Sale, Fla. Stat. § 48.193(1)(a)(2). Plaintiffs' claims arise directly out of that Florida-directed conduct. From August 11, 2020, Grandtag was the sole and exclusive manager of GT Madison, and in that capacity controlled PGSL's disposition of the Florida Property, including the February 28, 2023 sale of that Property for $5.25 million and the subsequent routing of the Sale Proceeds away from PGSL's Florida creditors.

28. Rene Leung committed tortious acts within Florida, Fla. Stat. § 48.193(1)(a)(2). As Manager of GT Madison and on behalf of PGSL's general partner, she personally executed the February 28, 2023 agreement selling the Florida Property for $5.25 million, and she executed the January 5, 2024 assignment disposing of GT Madison's remaining assets. She thereby directed the liquidation of a Florida asset and the diversion of its proceeds to the injury of Florida creditors, and Plaintiffs' claims arise directly out of that conduct.

29. Jameson Leung committed tortious acts within Florida and caused injury in Florida, Fla. Stat. § 48.193(1)(a)(2). As Chief Executive Officer of Grandtag, he exercised control over GT Madison, PGSL, and the Punta Gorda facility, and he directed and approved the sale of the Florida Property and the disposition of the Sale Proceeds. Upon information and belief, he directed, authorized, or received the diversion of proceeds from the Florida Sale, and Plaintiffs' claims arise directly out of that Florida-directed conduct.

30. GTM ABC committed acts within and directed at Florida, Fla. Stat.

§ 48.193(1)(a)(2), by taking assignment of the remaining assets of GT Madison—the general partner of a Florida operating entity—as the concluding step of the challenged disposition of the Florida asset; it is sued for avoidance and ancillary relief only.

31. The exercise of personal jurisdiction over each Defendant comports with due process. Each Defendant purposefully directed its own conduct at Florida—Grandtag and Jameson Leung by controlling and directing the acquisition, operation, and liquidation of a Florida assisted living facility and the diversion of the proceeds of its sale; Rene Leung by personally executing the sale of the Florida Property and the assignment of the debtor's remaining assets; and GTM ABC by taking assignment of those assets as the final step of the Florida disposition. Plaintiffs' claims arise directly out of each Defendant's Florida-directed conduct, and the exercise of jurisdiction over each Defendant is fair and reasonable.

## FACTUAL ALLEGATIONS

### A. The Investment Scheme

32. In 2011, Grandtag—a Hong Kong financial services company run by Jameson and Rene Leung—entered into a joint venture with Madison Realty Equities, LLC ("**MRE**"), a firm managed by Gary Langendoen, to channel Asian capital into American senior living facilities. They formed GT Madison, a Delaware limited liability company owned 50/50 by Grandtag and MRE, as the vehicle for the venture: Grandtag would recruit investors in Asia; MRE would deploy the funds in U.S. real estate.

33. Through GT Madison, the joint venture acquired assisted living facilities,

including The Palms of Punta Gorda, a 56-unit assisted living facility located at 2295 Shreve Street, Punta Gorda, Charlotte County, Florida (the "**Property**"). GT Madison served as the general partner of PGSL, the Delaware limited partnership that owned and operated the Property.

34. Jameson Leung, Rene Leung, and Langendoen sat on the board of GTM US Senior Housing REIT, LP (the "**REIT**"), which held GT Madison's portfolio of senior living assets. Ms. Leung served as President of the REIT's general partner.

35. MRE prepared an Offering Memorandum soliciting five investments of $500,000 each in Punta Gorda Acquisitions, LLC ("**PGA**"), a Delaware limited liability company affiliated with Florida EB5 Investments, LLC, a Florida regional center certified under the federal EB-5 immigrant investor program. PGA was the special purpose vehicle through which investor capital would be pooled and loaned to PGSL to finance the construction and expansion of the Property.

36. In 2011, each Plaintiff (or, in the case of Ms. Zhou, her late husband Mr. Zheng) invested $500,000 through PGA—$2 million in total—with the dual expectation of earning a return and qualifying for permanent U.S. residency through the EB-5 program.

37. What Plaintiffs were never told—and what the Offering Memorandum concealed—was that GT Madison was simultaneously a controlling member of PGA, the lender, and the general partner of PGSL, the borrower. The insiders sat on both sides of the loan. The Offering Memorandum represented that MRE would be a member of PGA; in reality, GT Madison—and through it, Grandtag—held that

position. Grandtag's involvement was never disclosed to Plaintiffs.

**B. The Promissory Notes and the Misappropriation of Plaintiffs' Funds**

38. In October and November 2013, PGA loaned $2.5 million, including Plaintiffs' pooled investment capital, to PGSL under two promissory notes—one for $1 million and one for $1.5 million—each bearing 7% annual interest and maturing in five years (the "**Notes**"). The stated purpose of the loans was construction financing for the expansion of the Property. The first Note, in the principal amount of $1 million, was executed on October 14, 2013 and matured on October 14, 2018; the second, in the principal amount of $1.5 million, was executed on November 8, 2013 and matured on November 8, 2018. PGSL repaid neither Note at maturity.

39. Upon information and belief, GT Madison caused Plaintiffs' investment funds to be diverted to unauthorized purposes, including retiring PGSL's pre-existing mortgage obligations and commingling the funds among related entities controlled by Defendants and their affiliates. The funds were not used exclusively—or even primarily—for the construction and expansion project described in the Offering Memorandum.

**C. Years of Concealment**

40. From 2014 through 2020, MRE provided Plaintiffs with annual tax returns and Schedule K-1 forms purporting to reflect returns on their investments. No cash distribution was ever made to any Plaintiff. When the Notes matured in 2018, PGSL did not repay them. MRE—which controlled both sides of the transaction—took no action to enforce repayment and continued sending Plaintiffs paperwork that

obscured the default.

41. In 2020, Langendoen attributed the facility's difficulties to the COVID-19 pandemic. By then, upon information and belief, the investment funds had long since been diverted.

**D. Grandtag Seizes Exclusive Control**

42. In 2020, Grandtag accused MRE and Langendoen of misappropriating funds from GT Madison. On August 11, 2020, Grandtag exercised its rights under the GT Madison operating agreement to remove MRE as co-manager and install itself as sole manager. From that date forward, Grandtag—and through it, Jameson and Rene Leung—held exclusive control over GT Madison, and through GT Madison, over PGSL and the Property.

43. In March 2021, the REIT assigned all of its partnership interests—including its interest in PGSL—directly to GT Madison, further consolidating Defendants' control over the Florida asset.

**E. Plaintiffs Sue to Recover Their Investment**

44. On July 27, 2021, Plaintiffs filed suit in the Superior Court of the State of California against PGA, PGSL, MRE, GT Madison, and Langendoen, seeking to recover their $2 million investment (the "**California Action**"). On August 9, 2023, the California court held that Plaintiffs had sufficiently alleged that they were intended third-party beneficiaries entitled to enforce the Notes.

45. At all times from July 27, 2021 forward, Plaintiffs held "claims" against PGSL and GT Madison within the meaning of Fla. Stat. § 726.102(4), and were

"creditors" of those entities within the meaning of Fla. Stat. § 726.102(5). Defendants knew of those claims: PGSL and GT Madison were defendants in the California Action, and the Leungs and Grandtag controlled both.

**F. The Secret Sale of the Property During the Pendency of the California Action**

46. On February 28, 2023—while the California Action was pending, and without any notice to Plaintiffs—GT Madison, as general partner of PGSL, sold the Property for $5.25 million (the "**Sale**"). Ms. Leung signed the sale agreement in her capacities as Manager of GT Madison and on behalf of PGSL's general partner. Plaintiffs received no notice of the Sale, no opportunity to protect their interests, and no distribution from the proceeds.

47. The Property was PGSL's sole significant asset and the only meaningful source of recovery for the Notes. Defendants knew that once the Property was sold and the proceeds removed, Plaintiffs' claims would be worthless.

48. After the Sale, PGSL withdrew its registered agents in both Delaware and Florida—but did not dissolve, wind up its affairs, or make any distribution to creditors. The entity simply went dark, removing the means by which Plaintiffs or any other creditor could locate or serve it.

**G. The Diversion of the Sale Proceeds**

49. Upon information and belief, in or after February 2023, Defendants caused the $5.25 million in proceeds of the Sale (the "**Sale Proceeds**") to be transferred out of PGSL and GT Madison and into the hands of Grandtag, Mr. Leung,

Ms. Leung, and/or entities and accounts under their control (the "**Proceeds Transfers**"). PGSL and GT Madison received no consideration—let alone reasonably equivalent value—in exchange for the Proceeds Transfers.

50. The precise dates, amounts, recipients, and pathways of the Proceeds Transfers are within Defendants' knowledge and concealed from Plaintiffs; even the independent assignee appointed over GT Madison's assets has been unable to obtain the banking records necessary to trace the money, as alleged below. Plaintiffs plead the Proceeds Transfers on information and belief based on the facts alleged herein, including the undisputed receipt of $5.25 million in February 2023 and the reported balance of $0 less than one year later.

**H. The Sham Assignment for the Benefit of Creditors**

51. On August 31, 2023—six months after the Sale—Grandtag and the Leungs caused GTM ABC, LLC to be formed in Delaware.

52. On January 5, 2024, Ms. Leung, acting as Manager of GT Madison, executed a General Assignment for the Benefit of Creditors purporting to assign GT Madison's assets to GTM ABC (the "**ABC Assignment**"). The ABC Assignment was a transparent device to create the appearance of an orderly, independent wind-down—after the money was already gone—and to interpose a new entity between Defendants and GT Madison's creditors.

53. The charade was quickly exposed. In May 2024, Alfred M. Masse, the manager of GTM ABC, reported that GT Madison held $0 in cash and only minimal

remaining assets—despite the $5.25 million Sale barely a year earlier. Upon information and belief, Mr. Masse has been attempting, without success, to obtain banking records from the assignor to trace the whereabouts of the $5.25 million.

54. Upon information and belief, the Sale Proceeds were transferred to Grandtag, Mr. Leung, Ms. Leung, or their affiliates before the ABC Assignment was executed, rendering the assignment an empty gesture over an empty shell—designed to launder the appearance of the wind-down while the money had already been spirited away.

**I. The Badges of Fraud**

55. The Proceeds Transfers and the ABC Assignment bear nearly every badge of fraud enumerated in Fla. Stat. § 726.105(2):

(a) The transfers were to insiders, § 726.105(2)(a): Grandtag was GT Madison's sole manager and a member; the Leungs were Grandtag's principals and GT Madison's managers; and GT Madison was PGSL's general partner;

(b) The transferors retained control of the assets after the transfers, § 726.105(2)(b): the Sale Proceeds moved to entities and accounts the Leungs and Grandtag controlled;

(c) The transfers were concealed, § 726.105(2)(c): Plaintiffs received no notice of the Sale or of any disposition of the Sale Proceeds, and learned of the Sale only after the fact;

(d) Before the transfers were made, the transferors had been sued, § 726.105(2)(d): the California Action was pending against PGSL and GT

Madison throughout;

(e) The transfers comprised substantially all of the transferors' assets, § 726.105(2)(e): the Property was PGSL's sole significant asset, and the Sale Proceeds were the only material asset remaining in the enterprise;

(f) Defendants removed or concealed assets, § 726.105(2)(g): the Sale Proceeds removed or concealed and the registered agents were withdrawn in two states;

(g) The transferors received no consideration—let alone reasonably equivalent value—for the Proceeds Transfers or the ABC Assignment, § 726.105(2)(h);

(h) The transferors were insolvent or became insolvent shortly after the transfers, § 726.105(2)(i): GT Madison reported $0 in cash within a year of receiving $5.25 million; and

(i) The transfers occurred shortly after substantial debts were incurred and litigation commenced, § 726.105(2)(j), and in close temporal proximity to one another, evidencing a single coordinated scheme.

56. Upon information and belief, all material assets of PGSL and GT Madison have been liquidated, diverted, or fraudulently transferred to Grandtag, Mr. Leung, Ms. Leung, or entities under their control, leaving nothing for Plaintiffs to recover through ordinary collection efforts.

57. The relationships between the parties is depicted below:




**COUNT I**
**Avoidance of Fraudulent Transfers—Actual Intent**
**(Fla. Stat. § 726.105(1)(a))**
***(Against All Defendants)***

58. Plaintiffs reallege and incorporate by reference paragraphs 1 through 47 above as though fully set forth herein.

59. At all relevant times, Plaintiffs were creditors of PGSL and GT Madison within the meaning of Fla. Stat. § 726.102(5), holding claims arising from the Notes, PGSL's obligation to repay Plaintiffs' $2 million investment, and the claims asserted in the California Action.

60. The Proceeds Transfers and the ABC Assignment were each "transfers" of "assets" by debtors within the meaning of Fla. Stat. § 726.102(2), (12) and (14).

61. Each such transfer was made with actual intent to hinder, delay, or

defraud Plaintiffs and the other creditors of PGSL and GT Madison, as evidenced by, among other things, the badges of fraud alleged in paragraphs above and enumerated in Fla. Stat. § 726.105(2).

62. Grandtag, Mr. Leung, Ms. Leung, and Does 1 through 50 are the first transferees of the Proceeds Transfers and/or the persons for whose benefit the Proceeds Transfers were made, within the meaning of Fla. Stat. § 726.109(2). GTM ABC is the first transferee of the ABC Assignment. None of them took in good faith or for reasonably equivalent value.

63. As a direct and proximate result of the fraudulent transfers, Plaintiffs have been damaged in an amount to be proven at trial, but in no event less than $2 million, plus interest accrued under the Notes.

64. Plaintiffs are entitled to relief under Fla. Stat. §§ 726.108 and 726.109, including: avoidance of the Proceeds Transfers and the ABC Assignment to the extent necessary to satisfy Plaintiffs' claims; attachment or garnishment of the transferred assets and their proceeds; an injunction against further disposition; the appointment of a receiver; a money judgment, pursuant to Fla. Stat. § 726.109(2), against Grandtag, Mr. Leung, Ms. Leung, and Does 1 through 50, as first transferees of the Proceeds Transfers or persons for whose benefit those transfers were made, in the amount of the lesser of Plaintiffs' claims or the value of the assets transferred; and such other relief as the circumstances may require. No money judgment is sought against GTM ABC, which is named for avoidance and ancillary relief only.

**COUNT II**
**Avoidance of Fraudulent Transfers—Constructive Fraud**
**(Fla. Stat. § 726.105(1)(b))**
***(Against All Defendants)***

65. Plaintiffs reallege and incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

66. PGSL and GT Madison did not receive reasonably equivalent value in exchange for the Proceeds Transfers or the ABC Assignment. The Sale Proceeds left the debtors for nothing in return.

67. At the time of the transfers, PGSL and GT Madison were engaged in a business or transaction for which their remaining assets were unreasonably small, and/or the transferors intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due, within the meaning of Fla. Stat. § 726.105(1)(b). After the Sale, PGSL retained no significant assets; after the ABC Assignment, GT Madison reported $0 in cash—all while the $2 million Note obligations, with interest, remained outstanding and were being actively litigated.

68. As a direct and proximate result, Plaintiffs have been damaged in an amount to be proven at trial, but in no event less than $2 million, plus interest, and are entitled to the remedies provided by Fla. Stat. §§ 726.108 and 726.109.

**COUNT III**
**Avoidance of Fraudulent Transfers—Insolvency**
**(Fla. Stat. § 726.106(1))**
***(Against All Defendants)***

69. Plaintiffs reallege and incorporate by reference paragraphs 1 through 54

above as though fully set forth herein.

70. Plaintiffs' claims arose before the Proceeds Transfers and the ABC Assignment were made: the Notes matured in 2018, and the California Action was filed on July 27, 2021.

71. PGSL and GT Madison made the Proceeds Transfers and the ABC Assignment without receiving reasonably equivalent value in exchange, and were insolvent at the time of the transfers or became insolvent as a result of them, within the meaning of Fla. Stat. §§ 726.103 and 726.106(1). After the Sale, PGSL held no assets of material value; after the ABC Assignment, GT Madison reported $0 in cash despite having received $5.25 million less than a year earlier.

72. As a direct and proximate result, Plaintiffs have been damaged in an amount to be proven at trial, but in no event less than $2 million, plus interest, and are entitled to the remedies provided by Fla. Stat. §§ 726.108 and 726.109.

**COUNT IV**
**Unjust Enrichment**
***(Against Defendants Grandtag, Jameson Leung, Rene Leung, and Does 1–50)***

73. Plaintiffs reallege and incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

74. Plaintiffs conferred a benefit on Defendants: Plaintiffs' $2 million in invested capital funded the expansion and preservation of the Property, and the value of that capital was realized in the $5.25 million Sale Proceeds that Defendants took for themselves.

75. Defendants voluntarily accepted and retained that benefit with full

knowledge of its source and of Plaintiffs' outstanding, actively litigated claims.

76. The circumstances render Defendants' retention of the benefit inequitable: Defendants pocketed the proceeds of an asset built with Plaintiffs' money while leaving the debtor entities judgment-proof shells. Plaintiffs have no adequate remedy at law against these Defendants for the value they retained.

77. Plaintiffs are entitled to restitution of the amounts by which Defendants were unjustly enriched, the imposition of a constructive trust and equitable lien upon the Sale Proceeds and all property traceable to them, and an equitable accounting of the disposition of the Sale Proceeds.

**COUNT V**
**Civil Conspiracy**
***(Against Defendants Grandtag, Jameson Leung, Rene Leung, and Does 1–50)***

78. Plaintiffs reallege and incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

79. Grandtag, Mr. Leung, and Ms. Leung agreed and combined among themselves and with others to defraud Plaintiffs and to strip the debtor entities of the assets securing Plaintiffs' claims. The object and means of the conspiracy were independently tortious and unlawful, including the fraudulent concealment of the self-dealing structure of Plaintiffs' investment, the secret liquidation of the Property during the pendency of the California Action, the wrongful diversion of the Sale Proceeds to which Defendants had no right as against the debtors' creditors, and the use of a sham assignment to disguise the looting.

80. Each of these Defendants is also a direct participant in, transferee of,

and/or beneficiary of the wrongful transfers, and acted for personal gain rather than as a mere facilitator. Each committed overt acts in furtherance of the conspiracy, including: executing the Sale; directing and receiving the Proceeds Transfers; withdrawing PGSL's registered agents in Delaware and Florida; forming GTM ABC; executing the ABC Assignment; and concealing the disposition of the Sale Proceeds.

81. As a direct and proximate result of the conspiracy, Plaintiffs have suffered damages in an amount to be proven at trial, but in no event less than $2 million, plus interest. Defendants' conduct was intentional, fraudulent, and undertaken with conscious disregard for Plaintiffs' rights, entitling Plaintiffs to punitive damages in an amount to be determined at trial.

**COUNT VI**
**Violations of the Racketeer Influenced and Corrupt Organizations Act**
**(18 U.S.C. § 1962(c) and (d))**
***(Against Defendants Grandtag, Jameson Leung, and Rene Leung)***

82. Plaintiffs reallege and incorporate by reference paragraphs 1 through 54 above as though fully set forth herein.

83. Defendants Grandtag, Jameson Leung, and Rene Leung are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), each being an entity or individual capable of holding a legal or beneficial interest in property.

84. At all relevant times, Defendants conducted the affairs of an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Enterprise"). The Enterprise consisted of Grandtag, Madison Realty Equities, LLC, GT Madison, PGSL, Punta Gorda Acquisitions, LLC, the GTM US Senior Housing REIT, LP, and

their principals, including Jameson Leung, Rene Leung, and Gary Langendoen, associated together for the common purpose of soliciting foreign investment capital under the EB-5 program, deploying that capital through United States real estate holdings, and, when Plaintiffs sought repayment, liquidating the Florida asset and diverting and concealing the proceeds. The Enterprise functioned as a continuing unit with an ascertainable structure and a division of roles—Grandtag and the Leungs recruiting and controlling investor capital from Hong Kong, and MRE and Langendoen deploying and administering the United States assets—that existed separate and apart from the pattern of racketeering activity alleged below.

85. Each Defendant is a "person" distinct from the Enterprise. The Enterprise is an association-in-fact comprising multiple entities and individuals, and each Defendant participated in the conduct of the Enterprise's affairs while remaining a separate legal person from the Enterprise as a whole.

86. Grandtag and the Leungs conducted and participated, directly and indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). Grandtag, through its control of GT Madison, directed the Enterprise's United States holdings; Jameson Leung, as Grandtag's Chief Executive Officer, directed and approved the solicitation of investor capital and the later liquidation and diversion of the Florida asset's proceeds; and Rene Leung, as President of Grandtag and Manager of GT Madison, executed the operative transactions, including the sale of the Property and the assignment of the debtor's remaining assets.

87. Defendants engaged in a pattern of racketeering activity consisting of multiple, related predicate acts of mail fraud and wire fraud, 18 U.S.C. §§ 1341 and 1343, in furtherance of a scheme to defraud Plaintiffs of money and property. The predicate acts include, without limitation:

(a) In or about 2011, the transmission by mail and interstate wire of the Offering Memorandum and related solicitation materials to Plaintiffs, which represented that MRE would be a member of PGA and which concealed that GT Madison—and through it, Grandtag—in fact controlled both PGA, the lender, and PGSL, the borrower, so that the insiders sat on both sides of the loan; Specifically, in or about July 2011 the Offering Memorandum, prepared by MRE and transmitted to Plaintiffs by mail and interstate wire, represented that "Madison Realty Equities will act as the manager of the Company and will offer limited liability units at U.S. Five Hundred Thousand Dollars (US$500,000) per unit," for up to five units, "while a sixth unit shall be owned by Madison Realty Equities." In fact, when Plaintiffs executed the PGA LLC Agreement, Exhibit A to that agreement identified GT Madison—not MRE—as the holder of a 16.67% interest in PGA, and neither the Offering Memorandum nor any related materials disclosed Grandtag's membership in GT Madison or GT Madison's simultaneous role as general partner of PGSL, the borrower;

(b) In or about October and November 2013, the use of interstate wires to transmit and deploy Plaintiffs' pooled investment capital under the

Notes, and, upon information and belief, the diversion of that capital to unauthorized purposes and its commingling among entities controlled by Defendants;

(c) From 2014 through 2020, the repeated transmission by mail and interstate wire of annual tax returns, Schedule K-1 forms, and related communications that purported to reflect returns on Plaintiffs' investments and that concealed the default on the Notes and the diversion of Plaintiffs' funds; These communications continued a pattern of public filings executed by MRE personnel on behalf of the Enterprise's Florida operating entity: Luke McCarthy, identified in the Offering Memorandum as a Senior Managing Director of MRE, signed PGSL's June 30, 2011 registration with the Florida Secretary of State as "Manager, Grandtag Madison Realty, LLC," and Forbes W. Burdette, identified as a Managing Director of MRE, signed PGSL's Florida annual reports in 2012, 2013, 2014, 2015, 2017, 2018, and 2019—each filing perpetuating the appearance that PGSL remained a going concern while the Notes went unpaid;

(d) In or after February 2023, the use of interstate and foreign wires to effect and conceal the diversion of the $5.25 million in Sale Proceeds out of PGSL and GT Madison and into accounts controlled by Grandtag and the Leungs, and communications, upon information and belief, in furtherance of that concealment.

88. These predicate acts were related—they shared the common purpose of obtaining and retaining Plaintiffs' capital through concealment and diversion, involved the same participants and victims, and employed similar methods—and they extended over a period of years, from 2011 through 2024. The predicate acts thus constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), exhibiting both closed-ended continuity over a substantial period and an ongoing threat of continued unlawful conduct through the concealment of the diverted proceeds.

89. In the alternative and in addition, Grandtag, Jameson Leung, and Rene Leung each agreed and conspired to conduct and participate in the conduct of the Enterprise's affairs through the pattern of racketeering activity alleged above, and each knew of and agreed to the commission of at least two predicate acts in furtherance of the scheme, in violation of 18 U.S.C. § 1962(d).

90. Plaintiffs' RICO claim is timely. Plaintiffs neither knew nor, in the exercise of reasonable diligence, could have known of their injury from the diversion of the Sale Proceeds until 2024, when the assignee reported that GT Madison held $0 in cash despite the $5.25 million Sale. Defendants concealed both the default on the Notes—continuing through 2020 to furnish tax documents and Schedule K-1 forms that obscured it—and the February 2023 Sale and subsequent disposition of its proceeds, of which Plaintiffs received no notice. This action is brought within four years of Plaintiffs' discovery of that injury.

91. As a direct and proximate result of Defendants' violations of 18 U.S.C.

§ 1962(c) and (d), Plaintiffs have been injured in their business and property within the meaning of 18 U.S.C. § 1964(c), including the loss of their $2 million in invested capital and the amounts due under the Notes, together with interest.

92. Plaintiffs are entitled to recover threefold the damages they have sustained, together with the costs of suit and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally where the law allows, as follows:

a. Avoiding the Proceeds Transfers and the ABC Assignment to the extent necessary to satisfy Plaintiffs' claims, pursuant to Fla. Stat. § 726.108(1)(a);

b. Granting an attachment or other provisional remedy against the transferred assets and other property of the transferee Defendants, pursuant to Fla. Stat. § 726.108(1)(b) and applicable law;

c. Enjoining Defendants from any further disposition of the Sale Proceeds, the transferred assets, or property traceable to them, pursuant to Fla. Stat. § 726.108(1)(c)1.;

d. Appointing a receiver to take charge of the transferred assets and property traceable to them, pursuant to Fla. Stat. § 726.108(1)(c)2.;

e. Entering a money judgment, pursuant to Fla. Stat. § 726.109(2), against Grandtag, Jameson Leung, Rene Leung, and Does 1 through 50, as first transferees of

the Proceeds Transfers or persons for whose benefit those transfers were made, each in the amount of the lesser of Plaintiffs' claims or the value of the asset that Defendant transferred or for whose benefit the transfer was made, with Plaintiffs' claims being not less than $2 million plus interest; no money judgment is sought against GTM ABC;

f. Awarding restitution and compensatory damages on Plaintiffs' unjust enrichment and civil conspiracy claims;

g. Imposing a constructive trust and equitable lien upon the Sale Proceeds and all property traceable to them, and ordering an equitable accounting of their disposition;

h. Awarding punitive damages on Count V;

i. Awarding threefold Plaintiffs' damages, together with the costs of suit and reasonable attorneys' fees, on Plaintiffs' RICO claim, pursuant to 18 U.S.C. § 1964(c);

j. Awarding prejudgment and postjudgment interest at the highest rates permitted by law;

k. Awarding Plaintiffs their costs of suit and reasonable attorneys' fees to the extent permitted by law; and

l. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 24, 2026

Respectfully submitted,

**LAW OFFICES OF ROBERT V. CORNISH, JR., PC**

*/s/ Kaitlin A. Harris*
Kaitlin A. Harris (Florida Bar #1029115)
1395 Brickell Avenue, Suite 800
Miami, FL 33131
kharris@rcornishlaw.com
Tel: (305) 735-5450
Fax: (571) 290-6052

*/s/ Alyssa Ann Tyler*
Alyssa Ann Tyler (*pro hac vice forthcoming*)
680 South Cache Street, Suite 100
P.O. Box 12200
Jackson, WY 83001
Email: atyler@rcornishlaw.com
Tel: (307) 264-0535
Fax: (571) 290-6052

*Attorneys for Plaintiffs*